IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK MAUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-0443-K |
| | § | |
| CHAMPION HOME BUILDERS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Champion Home Builders, Inc.'s ("Defendant") Amended Motion for Summary Judgment and Brief in Support (Doc. No. 29), Appendix in Support (Doc. No. 24), and Supplemental Appendix in Support (Doc. No. 30) (together, the "Motion for Summary Judgment"). Plaintiff Mark Maue ("Plaintiff") filed a Response to Defendant's Amended Motion for Summary Judgment (Doc. No. 32), including attached exhibits (Doc. Nos. 32-1, 32-2, 32-3) (together, the "Response"). Defendant then filed a Reply in Support (Doc. No. 34) of its Motion for Summary Judgment. The Court has carefully considered the Motion for Summary Judgment, the Response, the Reply, the evidence submitted in support, the relevant portions of the record, and the applicable law. Because Plaintiff failed to carry his

burden on summary judgment, the Court **GRANTS** Defendant's Motion for Summary Judgment.

Also before the Court is Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Evidence (the "Motion to Strike") (Doc. No. 33). Plaintiff filed a Response to Defendant's Motion to Strike (Doc. No. 35). Defendant did not file a reply. For the reasons explained below, the Court **OVERRULES** Defendant's Objections and **DENIES** Defendant's Motion to Strike.

## I. Factual and Procedural Background

In April 2021, Plaintiff interviewed with Defendant, a supplier of manufactured homes, for a job as a wall builder at its facility in Mansfield, Texas (the "Mansfield facility"). Doc. No. 24 at APP 003–004; Doc. No. 32-3 at Appx 239. Randy Read ("Read"), the General Manager of the Mansfield facility, and Juan Carlos Bocanegra ("Bocanegra"), the Production Manager at the Mansfield facility, interviewed Plaintiff. Doc. No. 24 at APP 004, 006, 101. Plaintiff was hired into that position and, in July 2021, was elevated to the position of Quality Inspector at Read's request. Doc. No. 24 at APP 003–004; Doc. No. 32-3 at Appx 239.

After a few weeks in the new position, Plaintiff resigned his employment with Defendant to take a project manager position with a custom home builder. Doc. No. 24 at APP 009, 102. Sometime thereafter, Read offered Plaintiff the newly created

role of Assistant Production Manager ("APM"), which Plaintiff accepted. *Id.* at APP 011–012, 102–103; *see id.* at APP 009. Plaintiff returned to the Mansfield facility as the APM in September 2021. *Id.* at APP 103. The APM job description specifies that "[w]hen Production Manager is on site, the [APM] follows and supports the manager's direction." Doc. No. 32-3 at Appx 247. The job description also identifies the APM's supervisory responsibilities to include "[m]anag[ing] subordinate supervisors who supervise the plant employees when the Production Manager is unavailable." *Id.*

Plaintiff knew that as APM he would report directly to Bocanegra, the Production Manager. Doc. No. 1 at 2, 3; Doc. No. 24 at APP 013, 014. Plaintiff felt "from the very beginning that Mr. Bocanegra did not want [Plaintiff] in the [APM] role." Doc. No. 32-3 at Appx 240. Plaintiff is a white American, who speaks only English and does not understand Spanish. Doc. No. 32-3 at 240; *see* Doc. No. 24 at APP 017; Doc. No. 1 at 2, 3. Bocanegra is Hispanic and bilingual, and the supervisors of the various departments are also bilingual. *Id.*; Doc. No. 24 at APP 017; Doc. No. 32-2 at Appx 136; *see* Doc. No. 29 at 11 n.1. (The parties use the term "bilingual" in the context of a person who speaks and understands both English and Spanish, and the Court does the same for purposes of this Opinion.)

As the Production Manager, Bocanegra held two meetings every workday. The first meeting happened at 6:40 a.m. (the "6:40 Meeting"). Doc. No. 24 at APP 018.

The department supervisors and Plaintiff regularly attended the 6:40 Meetings, where they and Bocanegra discussed the status of each department from the end of the previous workday to the production that was to start that morning. *Id.* at APP 016–017, 018. According to Plaintiff, the 6:40 Meetings were always conducted in English. *Id.* at APP 018–019. The second meeting occurred at 10:00 a.m. (the "10:00 Meeting") and the same people attended. *Id.* at APP 018. The 10:00 Meetings were used to check in with the supervisors about their shifts and "sometimes" a 10:00 Meeting was conducted in Spanish. *Id.* at APP 018, 019. (It is unclear from the record how often this occurred.)

After one such meeting had been conducted in Spanish, Plaintiff told Bocanegra he did not "understand what's going on for the day" and he asked Bocanegra what was said. *Id.* at APP 020. According to Plaintiff, Bocanegra explained that some of the supervisors are "just more comfortable in Spanish" and he told Plaintiff that the supervisors said the status of their departments was "just the same" when they had the 6:40 Meeting. *Id.* at APP 020–021; Doc. No. 32-3 at Appx 240. Plaintiff claims that, instead of translating exactly what was said, Bocanegra's "translation of a 25 minute meeting was summed up in a two sentence answer." Doc. No. 24 at APP 020. Plaintiff did not press Bocanegra for further explanation or translation of what was said in that 10:00 Meeting. *Id.*; *see* Doc. No. 32-3 at Appx 240. Plaintiff did, however, go directly

to Amy Newman, Defendant's Human Resources ("HR") manager, to complain about Bocanegra conducting that 10:00 Meeting entirely in Spanish and then not translating it word-for-word for Plaintiff. Doc. No. 24 at APP 022; Doc. No. 32-3 at Appx 242. Newman told Plaintiff that "[s]he would check into it," but she "didn't have an answer" when Plaintiff followed up with her "a day or two later." Doc. No. 24 at APP 022–023. Plaintiff admits he did not follow up with her ever again about this complaint. *Id.* at APP 023.

Plaintiff also took issue with Bocanegra speaking Spanish in front of him in other instances so to exclude Plaintiff from conversations. First, Plaintiff complains that Bocanegra was speaking with a supervisor in English but, when he saw Plaintiff approach them, Bocanegra began speaking in Spanish. Doc. No. 32-3 at Appx 240. Another time, Plaintiff was speaking with a department manager about a problem but, before he could resolve it, Bocanegra joined the conversation, "converted it to Spanish," and resolved the issue without telling Plaintiff what the solution was. *Id.* (The parties appear to use the terms "manager" and supervisor" interchangeably and, so, the Court does the same herein.)

Plaintiff insists he "told [Newman] many times" about Bocanegra's alleged discrimination towards him, specifically "when Bocanegra would hold meetings entirely in Spanish" and would not tell Plaintiff what was said. Doc. No. 32-3 at Appx 242;

Doc. No. 32-2 at Appx 142. After the third such complaint, Newman told Plaintiff he should "go and tell Read about it," which Plaintiff did. Doc. No. 32-3 at Appx 242; *see* Doc. No. 32-2 at Appx 144. According to Plaintiff, Read said "that he did not believe it was discrimination but he would check into it." *Id.* at Appx 242–243. Plaintiff "never heard anything further from [Read]." Doc. No. 32-3 at Appx 243.

Plaintiff felt that Bocanegra treated him "very differently than the Hispanic supervisors" Plaintiff was supervising and this "had an adverse effect" on Plaintiff's relationship with those managers and interfered with his ability to do his job. *Id.* at Appx 240–241; *see also id.* at Appx 241–242; Doc. No. 24 at APP 026–027, 034–035, 036.

In February 2022, Defendant's corporate Operational Excellence team ("OE Team") was scheduled to make a week-long visit to the Mansfield facility. During this visit, Bocanegra introduced each department manager to the OE Team by name except, when he got to Plaintiff, he introduced Plaintiff "dismissively" as the "Assistant Production Manager" and not by his name. Doc. No. 32-3 at Appx 243. Plaintiff reported this to Newman, complaining this was Bocanegra's "continuing discrimination" against him. *Id.* (Plaintiff made this complaint on February 15, 2022).

The week before the OE Team visit, Bocanegra told Maue he "would have to watch the entire plant" because Bocanegra would be occupied with the OE Team and

meetings that week. Doc. No. 24 at APP 045. On the first day of the visit, Bocanegra told Maue to "keep an eye on the Roofing Department." *Id.* at APP 045. Bocanegra was supervising that department because the previous supervisor had been fired sometime earlier. *Id.* at APP 045–046; *see* Doc. No. 24 at APP 103. Despite Bocanegra's instructions, Read saw Plaintiff doing things other than supervise and manage the Roofing Department, such as following the OE Team around the facility, "engaging members of the [OE] team in conversation," and going outside the facility to pick up screws off the ground. Doc. No. 24 at APP 103–104; *see also* Doc. No. 32-3 at Appx 244 (Plaintiff conceding he picked up nails and screws off the ground). Read became concerned that Plaintiff, who was the "number two" employee at the Mansfield facility, "was not following simple instructions." Doc. No. 24 at APP 104.

Read called Bocanegra and Newman into his office on February 18, 2022, to discuss Plaintiff's failure to follow Bocanegra's instructions to supervise and manage the roof build department during the OE Team visit. Doc. No. 32-3 at Appx 193–196. They all agreed Plaintiff should be fired and called Plaintiff into Read's office where he was terminated. *Id.* at Appx 193, 194–195; Doc. No. 24 at APP 050–051. The Notice of Employer Termination form, signed by Bocanegra, reflects that Plaintiff was terminated for "Insubordination." Doc. No. 32-2 at Appx 170.

## II. Defendant's Motion to Strike

Defendant moves the Court to strike the Affidavit of Troy Pierce (the "Pierce Affidavit") and portions of Plaintiff's affidavit, both of which were submitted in support of Plaintiff's Response, because they "contain inadmissible testimony." Doc. No. 33 at 1. Defendant also moves to strike the Pierce Affidavit in its entirety pursuant to Rule 37(c)(1) because Plaintiff failed to "identify the subjects of discoverable information" of which Pierce has knowledge. *Id.* at 8. Plaintiff filed a Response to Defendant's Motion to Strike (Doc. No. 35), disputing that his affidavit is a "sham affidavit" and asserting that his statements therein are admissible. *See generally* Doc. No. 35. Plaintiff did not, however, respond to Defendant's request to strike the Pierce Affidavit.

The Court carefully considered the Motion to Strike and **denies** Defendant's request to strike the Pierce Affidavit and Plaintiff's Affidavit. As for the Pierce Affidavit, Defendant's arguments are well-taken and Plaintiff did not respond. However, the Pierce Affidavit does not provide any evidentiary support for Plaintiff's responsive arguments, so striking the affidavit is moot. As for Plaintiff's Affidavit, the Court **denies** Defendant's Motion to Strike. First, the Court is not persuaded that Plaintiff's affidavit is a "sham affidavit" that must be struck. It is true that a party cannot "defeat a motion for summary judgment using an affidavit that impeaches,

without explanation, sworn testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022); *see Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) ("[A] district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'") (internal citation omitted). But a party's affidavit also cannot be disregarded "merely because it conflicts to some degree with an earlier deposition." *Seigler*, 30 F.4th at 477 (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)). Indeed, the "sham affidavit doctrine" will apply only where the affidavit testimony is "inherently inconsistent with prior testimony." *Seigler*, 30 F.4th at 477 (quoting *Winzer*, 916 F.3d at 472).

The Court has carefully reviewed and compared the statements made in Plaintiff's affidavit with his deposition testimony. The Court is not convinced that Plaintiff's affidavit contains statements inconsistent with his deposition testimony, as opposed to statements that supplement his prior deposition testimony. *See Siegler*, 30 F.4th at 477 ("An affidavit that supplements rather than contradicts prior deposition testimony falls outside the doctrine's ambit.") (internal quotations omitted). The Court also concludes that, even if there are inconsistencies, they can be "reconciled" and, therefore, Plaintiff's affidavit is not a sham. *See Winzer*, 916 F.3d at 473. For these reasons, the "sham affidavit doctrine" does not apply.

Defendant also argues that Plaintiff's affidavit is not competent summary judgment evidence because certain statements therein are not made on personal knowledge and are simply conclusory statements. The Court has carefully reviewed those portions challenged by Defendant and has considered Plaintiff's response to the same. The Court concludes that those statements are not based on a lack of personal knowledge nor are they merely conclusory. Accordingly, the Court **overrules** Defendant's objections to Plaintiff's affidavit.

For these reasons, the Court **denies** Defendant's Motion to Strike.

## III. Defendant's Motion for Summary Judgment

### A. Legal Standards and Applicable Law

The court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a motion for summary judgment, the court views all evidence and reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia Pharms., Inc.*, 33

F.4th 814, 824 (5th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

While the court resolves "factual controversies in favor of the nonmoving party, an actual controversy exists only when both parties have submitted evidence of contradictory facts." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)) (internal quotations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Id.* (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)).

The movant must identify the portions of the record that demonstrate the absence of evidence on an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 323; *Owens*, 33 F.4th at 824. Once the movant carries its burden, the nonmovant must go beyond the pleadings to "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmovant cannot defeat a motion for summary judgment with "speculative theories" or "unsubstantiated assertions, improbable inferences, and unsupported speculation." *Guillot*, 59 F.4th at 750; *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023). Nor is it

the court's responsibility to "sift through the record in search of evidence" supporting the nonmovant's opposition to summary judgment. *Ragas*, 136 F.3d at 458 (internal quotations omitted); *see United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Ultimately, "[i]f the record could not lead a rational trier of fact to find for [the non-moving party], there is no genuine dispute for trial" and summary judgment is appropriate. *Owens*, 33 F.4th at 824 (internal citation omitted).

**B. Legal Analysis**

**1. Discrimination Based on National Origin and Race**

Plaintiff asserts claims of discrimination by Defendant based on his race and his national origin pursuant to 42 U.S.C. § 1981 and the Texas Commission on Human Rights Act (the "TCHRA"), Texas Labor Code § 21.051 *et seq.* Section 1981 prohibits intentional discrimination based on race. 42 U.S.C. § 1981(a); *accord Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609, 613 (1987) (concluding that "racial discrimination [is what] Congress intended § 1981 to forbid" even though the statute "does not itself use the word 'race'"); *cf. Body by Cook, Inc. v. State Farm Mut. Auto Ins.*, 839 F.3d 381, 386 (5th Cir. 2017) (pointing out that the court's "analysis of discrimination claims under [Section] 1981 is identical to the analysis of Title VII claims"). The TCHRA prohibits an employer from intentionally discriminating against

an individual "because of" his race or national origin. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500, 505 (Tex. 2024) (citing TEX. LAB. CODE § 21.051); *cf. Mission Consol. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (confirming that § 21.051 "is effectively identical to Title VII" and, therefore, "those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA'"); *Church v. Kare Distrib., Inc.*, 211 F. App'x 278, 280 (5th Cir. 2006) (same).

Where, as here, the plaintiff has no direct evidence of discrimination, courts employ the *McDonnell Douglas* burden-shifting framework in evaluating employment discrimination claims under both § 1981 and the TCHRA. *See, e.g., Owens*, 33 F.4th at 825 (§ 1981); *Flores*, 709 S.W.3d at 505 (TCHRA). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that he: 1) belongs to a protected group; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was replaced by someone outside of his protected group or was treated less favorably than a similarly situated employee outside of his protected group. *Owens*, 33 F.4th at 825 (§ 1981); *Flores*, 709 S.W.3d at 505 (TCHRA). Once the plaintiff makes that required showing, the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. *Owens*, 33 F.4th at 825; *Flores*, 709 S.W.3d at 505. If the employer carries its burden, the plaintiff must prove "with substantial evidence" that the stated reason is pretextual. *Owens*, 33 F.4th at

825; *Flores*, 709 S.W.3d at 505. It is well-established that "the burden of proof remains with the employee throughout." *Saketkoo v. Admin'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022); *accord Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

a. Language as Basis of Discrimination Claim

Defendant argues that Plaintiff's claims of race and national origin discrimination fail as a matter of law because language cannot be the source of such claims. Doc. No. 29 at 31–33; *see* Doc. No. 34 at 6–7. Plaintiff responds that his race and national origin discrimination claims are not based simply on the use of Spanish at the Mansfield facility, but that it was done to purposely exclude Plaintiff from "communications" necessary to perform his job, thereby demonstrating Bocanegra's discriminatory attitude towards Plaintiff because he is a white American. Doc. No. 32 at 27.

Despite his attempt to portray the basis of his claims differently, there is simply no question that, on this record, language is the source of Plaintiff's race and national origin discrimination claims. *See, e.g.,* Doc. No. 24 at APP 039–040 (Plaintiff reported to HR he was "being discriminated [sic]" *because* Bocanegra "refuses to speak in a language I understand, and is using his Hispanic, or the Spanish language, to discriminate me [sic] from them."); *see id.* at APP 038. There is no support in the case

law or the statutory language to support the legal premise that an individual's ability or inability to speak a particular language is automatically tethered to his race or national origin and, therefore, can provide the basis for a discrimination claim. *See, e.g., Garcia v. Gloor*, 618 F.2d 264, 268, 270 (5th Cir. 1980) (confirming that neither Title VII nor "common understanding" "support[s] an interpretation that equates the language an employee prefers to use with his national origin"); *Chimm v. Spring Branch Indep. Sch. Dist.*, 396 F. App'x 73, 74 (5th Cir. 2010) (stressing that "[a] person's language is not a listed category" in Title VII); *Onyeugbo v. Providencia Grp. LLC*, Civ. Action No. 3:22-CV-1719-B-BH, 2023 WL 3958909, at *4 (N.D. Tex. May 22, 2023)(Ramirez, M.J.) ("As explained, language is not a racial or national origin trait and, thus, cannot be the basis for a race or national origin discrimination claim.") (internal quotations omitted); *Belmonte v. City of Dallas, Tex.*, Civ. Action No. 3:19-CV-2656-G-BK, 2021 WL 1903707, at *2 (N.D. Tex. Feb. 9, 2021)(Toliver, M.J.), *accepted by*, 2021 WL 1895244 (N.D. Tex. May 10, 2021) (same). Plaintiff submits no legal support on which the Court can justify deviating from this legal precedent.

Further, Plaintiff's own summary judgment evidence reinforces this conclusion because it establishes that Plaintiff himself "made efforts to learn Spanish" while working for Defendant and at least one of his white (non-Hispanic) American co-workers was actively learning and speaking Spanish while working at the Mansfield

facility. *See, e.g.,* Doc. No. 32 at 10; Doc. No. 32-2 at Appx. 52–53; Doc. No. 32-3 at Appx. 240.

This is also not a case where the employer implemented or enforced a specific language policy, specifically one that was intended to discriminate against white Americans or had the effect of discriminating against white Americans. *See Garcia*, 618 F.2d at 268, 270; *Belmonte*, 2021 WL 1903707, at *2. Plaintiff simply complains that Spanish was (occasionally) spoken in his presence at the Mansfield facility, he could not understand what was said, and, when he did ask for a translation, he was given a summary of what was said. *See also* Doc. No. 24 at APP 031–032 (in his deposition, Plaintiff testified that "a reasonable accommodation would be that everybody speak English"). None of this is attributable to Plaintiff being white or American. *See Cohen v. Am. Airlines Fed. Credit Union*, 2023 WL 8018913, at *4 (S.D. Fl. Nov. 20, 2023) ("[T]he ability or inability to speak Spanish is not equivalent to national origin. . . . Many Americans speak Spanish, and many non-Americans do not speak Spanish."). The fact that Plaintiff preferred that only English be spoken is of no consequence. *See Garcia*, 618 F.2d at 269 (confirming that "[n]o authority . . . gives a person a right to speak any particular language while at work; unless imposed by statute, the rules of the workplace are made by collective bargaining or, in its absence, by the employer").

"Language is not a racial or national origin trait and, thus cannot be the basis of a race or national origin discrimination claim." *Belmonte*, 2021 WL 1903707, at *2 (citing *Garcia*, 618 F.2d at 268–71). It is clear on this record that Plaintiff's race and national origin discrimination claims arise solely from Bocanegra's use of Spanish in front of Plaintiff, a language he does not speak or understand. It is equally clear that language cannot sustain a race or national origin discrimination claim. Accordingly, Plaintiff's discrimination claims under § 1981 and the TCHRA fail as a matter of law and Defendant is entitled to summary judgment on the same.

b. <u>Prima Facie Case of Discrimination Under TCHRA and § 1981</u>

Even if Plaintiff's discrimination claims did not fail as a matter of law, those claims would nevertheless fail under the *McDonnell Douglas* framework because Plaintiff does not establish a prima facie case for race or national origin discrimination. The first three elements of a *prima facie* case are undisputed, *see* Doc. No. 34 at 8, n. 4, so the Court examines only the fourth factor of whether Plaintiff was replaced by someone outside of his protected group or was treated less favorably than a similarly situated employee outside of his protected group. *See Owens*, 33 F.4th at 825 (§ 1981); *Flores*, 709 S.W.3d at 505 (TCHRA).

Plaintiff argues he was treated less favorably than someone outside his protected group and identifies Daniel Ramirez, a Hispanic employee who was a "roof build

manager," as that person who was treated more favorably. *See* Doc. No. 32 at 27–28 (arguing disparate treatment); *see also Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 (5th Cir. 2023) (confirming that a plaintiff can prove discrimination through disparate treatment or disparate impact). In a single paragraph, Plaintiff asserts that Ramirez, who was cited for insubordination for lying to Read, was treated more favorably than Plaintiff because, instead of being terminated for his insubordination, he was transferred to another of Defendant's facilities with Read's help. *Id.* Plaintiff argues he was treated differently even though "[h]is alleged infractions were arguably much less than Ramirez's." *Id.*

Plaintiff fails to establish or raise a genuine dispute that he experienced disparate treatment based on his race or national origin as compared to Ramirez or that Ramirez is, in fact, similarly situated such that he is a comparator. "Disparate treatment describes 'actions that treat a plaintiff worse than others based on his race, color, religion, sex, or national origin.'" *Abdallah*, 83 F.4th at 1013 (cleaned up) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). "Employees are similarly situated when they hold the same job responsibilities, share the same supervisor or have their employment status determined by the same person, and have essentially comparable violation histories." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 580 (5th Cir. 2020) (cleaned up). "Typically, a plaintiff who proffers the treatment of

a fellow employee must show that the plaintiff's termination was taken under nearly identical circumstances as those faced by the comparator." *Id.* (cleaned up) (quoting *Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019)).

Other than using the phrase "disparate treatment" in his responsive argument, Plaintiff does not claim that he was treated less favorably than Ramirez *because of* Plaintiff's race or national origin. Plaintiff submits that Ramirez was "transferred to the Burleson facility because Read called them for that purpose," Ramirez was transferred with the same salary, the "reasons for Ramirez's termination" are long, and Plaintiff was performing Ramirez's job when Plaintiff was terminated. Doc. No. 32 at 27–28. Plaintiff's Response is devoid of any argument or record citation showing that, "but for" his race or national origin, he would have been treated more favorably. *See Abdallah*, 83 F.4th at 1014. It appears that Plaintiff relies simply on the fact that Ramirez is Hispanic. Notably, Plaintiff does not establish Ramirez's national origin. But "[i]n such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco*, 448 F.3d at 787. On this record, the Court cannot make that finding. The undersigned would have to assume discriminatory motive exists solely because Ramirez is Hispanic and Plaintiff is white. (Again, there is no evidence regarding Ramirez's national origin and the fact that he is Hispanic does not mean he cannot also be an American.) Plaintiff wholly fails to establish discriminatory motive.

*See Saketkoo*, 31 F.4th at 999 ("the burden of proof remains with the employee throughout").

Further, Plaintiff fails to establish that Ramirez is a valid comparator. *See Owens*, 33 F.4th at 827. Plaintiff was the APM at the Mansfield facility with numerous supervisory responsibilities throughout the facility and all departments, *see* Doc. No. 32-3 at Appx 240–241, whereas Ramirez was a supervisor of the roof build department at the time of his termination, *see* Doc. No. 24 at APP 045. Plaintiff does not submit any argument or evidence showing that he and Ramirez had similar job responsibilities, qualifications, experience, or other such considerations. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (identifying factors the court considers in determining whether a comparator is "similarly situated"). The record evidence also contradicts Plaintiff's conclusory assertions that his and Ramirez's respective "infractions" were identical (or even similar) and that Ramirez was transferred rather than terminated. *See, e.g.*, Doc. No. 32-3 at Appx. 206–10; Doc. No. 24 at APP 045–046, APP 050–051, APP 097–098, APP 102–105. Plaintiff does not establish that Ramirez was a valid comparator and, consequently, Plaintiff fails to satisfy the *McDonnell Douglas* test. *Herster*, 887 F.3d at 185; *accord Owens*, 33 F.4th at 827.

Because Plaintiff fails to establish a prima facie case of discrimination under § 1981 or the TCHRA, the Court would nevertheless conclude that Defendant is entitled to summary judgment on Plaintiff's claims of race and national origin discrimination for these reasons as well.

**2. Hostile Work Environment**

In addressing the alleged TCHRA violations in his Response, Plaintiff includes a section entitled "Hostile Work Environment." Doc. No. 32 at 22–25. Plaintiff argues that he "may establish a TCHRA violation based on race/national origin discrimination creating a hostile work environment." Doc. No. 32 at 22. For a hostile work environment claim, Plaintiff must "show that he was subjected to 'unwelcome harassment . . . based on race' that 'affected a term, condition, or privilege of employment,' and that [Defendant] 'knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (Title VII hostile work environment) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).

Plaintiff alleges in his Complaint claims for "Discrimination/Retaliation in Violation of Texas Labor Code and Section 1981," but he did not allege a hostile work environment claim, *see generally* Doc. No. 1, or move to amend his Complaint to do so. For the first time in his Response, Plaintiff refers to a hostile work environment claim.

*See* Doc. No. 32 at 22. "It is well settled in our circuit that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (cleaned up) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)); *accord Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021)(per curiam) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment."). That said, the Fifth Circuit recently emphasized that the federal pleading standard does not require "magic words" or that "a party [] include the proper label for a claim in their complaint so long as they plead each element of the claim that they are trying to bring." *Barron v. United States*, 111 F.4th 667, 673–74 (5th Cir. 2024).

Although "magic words" are not required, Plaintiff did not plead the elements of a hostile work environment claim in his Complaint. *Id.* For instance, Plaintiff did not allege any facts which would allow the Court to reasonably infer Plaintiff was subjected to harassment of a severe level that affected the conditions of his employment. *See Hernandez*, 670 F.3d at 651 ("Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"). To be sure, "[n]either the defendant nor the district court [are] required to read into

the carefully stated complaint . . . a wholly different claim that was not pled." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 926 (5th Cir. 2022). For these reasons, a hostile work environment claim is not properly before the Court and will not be considered. *See id*; *Jackson*, 3 F.4th at 189 (remarking that the court has "repeatedly emphasized" the rule that "a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (collecting cases).

**3. Retaliation**

Plaintiff also claims he was retaliated against for engaging in protected activity in violation of § 1981 and the TCHRA. Section 1981 protects an employee from retaliation for exercising his rights under § 1981 to complain of or oppose racial discrimination. §1981(b); *see Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003); *Nixon El v. Gen. Motors Co.*, 2020 WL 3848099, at *2 (N.D. Tex. July 8, 2020)(McBryde, J.). The TCHRA prohibits an employer from retaliating against an employee because he engages in protected activity, including "oppos[ing] a discriminatory practice." TEX. LAB. CODE § 21.005; *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 585 (Tex. 2017).

When the plaintiff has no direct evidence of retaliation, the court utilizes the *McDonnell Douglas* burden-shifting framework in analyzing those claims. *Davis v. Fort*

*Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). Under that framework, the plaintiff must first establish a prima facie case of retaliation, which then triggers the employer's burden to provide a legitimate, non-retaliatory reason for its decision that resulted in the adverse action. *Id.* at 490. Once the employer discharges its burden, the employee must show that the employer's reason is pretext for retaliation. *Id.* To satisfy his burden, the employee must establish that, "but for" the protected activity, the adverse employment action would not have happened. *Owens*, 33 F.4th at 835.

> This ["but for" cause] inquiry requires a greater showing than mere causal connection. It requires that the plaintiff show that protected conduct was *the* reason for the adverse action. "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct."

*Id.* (emphasis original) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)); *see Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (emphasizing that "temporal proximity alone is insufficient to prove but for causation"); *LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."); *Sandstad*, 309 F.3d at 899 ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of

fact.”). Importantly, “the burden of persuasion remains with the employee throughout.” *Saketkoo*, 31 F.4th at 1000.

To make a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal connection exists between those two events. *See Owens*, 33 F.4th at 835 (§ 1981); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) (TCHRA). To satisfy the opposition requirement, the plaintiff “need only show that [he] had a reasonable belief that the employer was engaged in unlawful employment practices.” *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citation and quotation omitted); *accord San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) (“Opposition to a discriminatory practice is a protected activity irrespective of the merits of the underlying discrimination claim.”). Plaintiff confirms his termination is the only adverse employment action on which his retaliation claim is based. Doc. No. 32 at 40 (“Maue’s retaliation claim is linked to his termination.”).

Even if the Court assumes without deciding that Plaintiff establishes a prima facie case of retaliation under § 1981 and the TCHRA, he nevertheless fails to show that Defendant’s legitimate, non-retaliatory reason for terminating him is pretext. *See, e.g.,* Doc. No. 32-2 at Appx 170 (Plaintiff’s Notice of Termination listing

"Insubordination" as "Reason for Separation"); Doc. No. 24 at APP 104–105; *see White v. N. La. Criminalistics Lab'y*, 2026 WL 1208697, at *5 (5th Cir. May 4, 2026) (insubordination is legitimate, non-retaliatory reason for adverse employment action).

Under the *McDonnell Douglas* framework, Plaintiff must demonstrate that Defendant's reasons are pretext for retaliation, that "but for" his protected activity opposing a discriminatory practice, he would not have been terminated. *See Owens*, 33 F.4th at 835. This requires Plaintiff to "show a conflict in substantial evidence as to but-for causation to avoid summary judgment." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 653 (5th Cir. 2025) (quoting *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)) (internal quotations omitted).

Plaintiff offers a single sentence in his Response addressing pretext for his retaliation claims: "Plaintiff incorporates by reference the pretext evidence provided above in section B(2)(c)." Doc. No. 32 at 43. Section B(2)(c) of Plaintiff's Response addresses "Pretext" in the context of his race and national origin *discrimination* claims. In doing this, Plaintiff wholly fails to address, let alone demonstrate, that Defendant's legitimate, non-retaliatory reason for terminating Plaintiff was pretext for *retaliation*. The Fifth Circuit has already spoken on this—argument and evidence of pretext for a plaintiff's *discrimination* claims "[are] irrelevant to [his] *retaliation* claim." *Davis*, 765

F.3d at 491 (emphasis original). As a result, Defendant has proffered a legitimate, non-retaliatory reason for terminating Plaintiff that he did not rebut. *See id.*

"In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (internal citation omitted). Because Plaintiff did not carry his burden, Defendant is entitled to summary judgment on Plaintiff's retaliation claims pursuant to § 1981 and the TCHRA.

**4. Summary Judgment on All Claims**

For all these reasons, the Court must grant summary judgment in favor of Defendant on all of Plaintiff's claims. *See also Little Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.").

## IV. Conclusion

The Court **OVERRULES** Defendant's Objections and **DENIES** Defendant's Motion to Strike and **GRANTS** Defendant's Motion for Summary Judgment in all respects. The Court will enter a final judgment separately.

**SO ORDERED.**

Signed August 25th, 2026.

Ed Kinkeade

ED KINKEADE
UNITED STATES DISTRICT JUDGE